UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TIMOTHY HARRIS,                              )
                                             )
          Plaintiff,                         )
                                             )
     v.                                      )          Case No. 4:19-CV-02948 JCH
                                             )
FEDERAL EXPRESS CORPORATION                  )
LONG TERM DISABILITY PLAN,                   )
                                             )
          Defendant.                         )

## MEMORANDUM AND ORDER

This is an action for long term disability ("LTD") benefits pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1132(a)(1)(B).  Plaintiff Timothy Harris ("Plaintiff") filed this lawsuit on October 31, 2019, challenging Defendant Federal Express Corporation Long Term Disability Plan's ("Plan") decision to deny him long term disability ("LTD") benefits. The matter is currently pending before the Court on the parties' cross motions (Docs. 17 and 20) for summary judgment on the administrative record ("AR").

## BACKGROUND

Plaintiff began working as a Courier/Delivery Truck Driver at Federal Express Corporation ("Fedex") in 1993, and at all relevant times, was a participant in the Plan, which is an employee welfare benefit plan governed by ERISA.  AR 408.[1]  Fedex is the Administrator of the Plan, and Aetna Life Insurance Company ("Aetna") is the designated Claims Paying Administrator of the

---

[1]  All citations to specific portions of the AR will be to the Bates-stamped number found in the lower right-hand corner of each page.

Plan.   AR 1330-31.   The Plan grants to Aetna exclusive discretionary authority for claims administration and determination of eligibility for benefits under the Plan.  AR 1366.

Federal Express employees covered by the Plan are eligible for long-term disability benefits if the employee becomes disabled under the Plan's definition.  AR 1341.  In that instance, the Plan provides 60% of the employee's monthly income.  *Id.*  The Plan places the burden of proving disability on the employee and requires proof in the form of "Significant Objective Findings."  AR 1332; 1357.  The Plan defines "Disabled" as:

> Disability or Disabled shall mean either an Occupational Disability or a Total Disability; provided, however, that a Covered Employee shall not be deemed to be Disabled or under a Disability unless he is, during the entire period of Disability, under the direct care and treatment of a Practitioner and such Disability is substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms.

AR 1332.

> "Significant objective findings" are further described as follows:

> Significant objective findings of a disability are necessary to substantiate the period of time your health care professional indicates you are disabled. Significant objective findings are those that can be observed by your health care professional through objective means, not just from your description of the symptoms. Objective findings include:
>
> —Medical examination findings
>
> —Test results
>
> —X-ray results
>
> —Observation of anatomical, physiological or psychological abnormalities.
>
> **It is important to remember that pain alone is not proof of disability.**

AR 631-32; 922; 1332 (emphasis in original).

An employee suffering from an Occupational Disability, defined by the Plan as a physical

or mental impairment that prevents an employee from performing the duties of his regular occupation, may receive a combination of short term and/or long term benefits for a period of two years under the Plan.  AR 1335; 1341-42.  In 2016, Plaintiff was in treatment with Dr. Selam Deutschmann, ("Dr. Deutschmann"), for lumber disc disease with sciatica and hip arthrosis.  AR 1; 7; 71; 180-3; 239.  Plaintiff also suffered from chronic pain and morbid obesity.  AR 235.  Due to these health conditions, and based on Dr. Deutschmann's records, Aetna determined that Plaintiff was unable to lift items weighing 75 pounds or to drive a commercial vehicle, and thus was unable to perform the duties of his occupation as courier; accordingly, Plaintiff was deemed "Occupationally Disabled" and eligible for short-term disability ("STD") benefits under the Plan. AR 426-29.  Plaintiff received STD benefits for six months, between August 24, 2016, through February 21, 2017.  AR 426; 463.

Thereafter, pursuant to the Plan, Plaintiff was enrolled in the LTD Plan, which provides two types of disability benefits:  Occupational Disability and Total Disability.  AR 481-82; 544; 558-62.  Plaintiff was deemed eligible for the former and was granted full LTD benefits for an Occupational Disability for two years.  Plaintiff received such benefits from February 22, 2017, to February 21, 2019.  *Id.*

To receive LTD benefits beyond twenty-four months, an individual must meet the Plan's definition for "Totally Disabled." *See* AR 1337; 1342.  "Total Disability" is defined in Section 1.1(ii) of the Plan as "the complete inability of a Covered Employee, because of a medically-determinable physical or functional impairment (other than an impairment caused by a mental or nervous condition or a Chemical Dependency) to engage in any compensable employment for twenty-five hours per week."  *Id.*  Pursuant to its investigation as to whether Plaintiff would transition to Total Disability under the Plan, an Aetna nurse requested a "peer review" of

3

Plaintiff's claim by an orthopedic surgeon, Dr. Kenneth Kopacz ("Dr. Kopacz").  AR 556-58.

Dr. Kopacz conducted the requested review, and, on January 15, 2019, submitted his report in

which he concluded that the "clinical documentation do[es] not reveal a functional impairment

that would preclude the claimant from engaging in any compensable employment for a minimum

of twenty-five (25) hours per week." AR 266.  In a letter dated January 15, 2019, Aetna informed

Plaintiff that he was not eligible for Total Disability LTD benefits under the Plan. AR 10-12; 389;

558-62.  Plaintiff was advised of his right to appeal the decision, and he did so on June 19, 2019.

AR 13.

In the meantime, Plaintiff had applied for and was approved to receive social security

disability benefits.  AR 232-260.  At his December 15, 2016, Social Security Administration

("SSA") hearing, held before an administrative law judge ("ALJ"), a vocational rehabilitation

expert opined that a hypothetical person with Plaintiff's physical conditions would have the

residual functional capacity to work as, among other things, a routing clerk, a folding machine

operator, or a housekeeper.  AR 35; 40.  At the August 9, 2017, SSA hearing, held before the

same ALJ, another vocational rehabilitation expert[2] opined that, considering Plaintiff's chronic

pain, back problems, and morbid obesity, she would limit Plaintiff to "light lifting and carrying,

20 [lbs.] occasionally or 10 frequently[,] standing and walking would be 6 [hours] out of 8,

sitting 6 out of 8," and Plaintiff could never climb ladders, ropes or scaffold." AR 74.  An

additional vocational rehabilitation expert opined that a hypothetical person with Plaintiff's

physical and chronic pain limitations would be able to perform certain light, unskilled jobs,

---

[2]  There is some confusion in the record as to whether the expert who testified at this hearing was an internal
medicine expert, or a vocational expert.  In the hearing transcript she is identified as a vocational expert [AR 63], but
in the ALJ's decision she is described as an internal medicine expert [AR 238].  However, as the content of her
testimony is the same either way, this distinction is immaterial.

including hand-packer, housekeeper, and production worker-assembler.  AR 79-80.  However, in response to the ALJ's question regarding absenteeism, that same vocational rehabilitation expert also opined that if such hypothetical person would need to be absent for 1.5 to 2 days each month due to chronic pain symptoms or other reasons, he would likely be terminated, and would be deemed unemployable under the applicable social security guidelines.  AR 81-82.

In a decision dated August 16, 2017, the ALJ determined that Plaintiff had the functional residual capacity to perform a range of sedentary work, including lifting up to ten pounds occasionally; lifting less than ten pounds frequently; standing or walking at least 2 hours in an eight-hour workday and sitting for six hours in the same; could never climb ladders, ropes, of scaffolds, but could climb ramps and stairs; could balance, stoop, kneel, and crawl occasionally, and that Plaintiff may be absent for one to two days each month.  AR 236.  The ALJ concluded that Plaintiff was disabled under the applicable social security regulations.  AR 241.

As part of the appeals process on his LTD claim, Aetna reviewed Plaintiff's relevant medical records, including records from his treating physicians, Dr. Manish Suthar ("Dr. Suthar") [AR 112-135], Dr. Frank Tull ("Dr. Tull") [AR 136-43], and Dr. Deutschmann [AR 144-63].  The Court will briefly describe Plaintiff's medical treatment history as found in the AR.

As noted *supra*, Plaintiff had a treatment history with Dr. Deutschmann throughout the relevant period.  During the course of Plaintiff's care, Dr. Deutschmann noted no material changes in his orthopedic examinations.  AR. 195-198; 210-215.  In 2018, Dr. Deutschmann noted that Plaintiff's pain remained unchanged.  AR 219-221.  In 2019, Dr. Deutschmann recommended that Plaintiff seek treatment with a neurologist, a nutritionist, and mental health professionals.  AR 170-74.  Dr. Deutschmann opined that Plaintiff was "unable to do any work

of any kind" due to his inability "to continually and repetitively sit, stand, bend, and stoop." AR 174.

Plaintiff was referred to Dr. Suthar for treatment of pain symptoms. AR 113. Dr. Suthar noted that Plaintiff had experienced lower back pain "off and on for years" since as early as 2007, and that although he takes anti-inflammatory medication such as Advil, his pain symptoms do not improve upon such treatment. AR 113. Dr. Suthar, at a visit on February 8, 2016, noted that a return to work would likely increase Plaintiff's lower back pain, and noted that he "must do his best to work through these new aches and pains." AR 115. Dr. Suthar recommended a treatment plan that included lumbar facet injections, weight loss, a home exercise plan, and avoiding activities that re-create pain. AR 116.

Plaintiff was also referred to Dr. Tull, an orthopedic surgeon, for treatment of his pain symptoms. AR 138. Upon examination, Dr. Tull noted that Plaintiff was able to ambulate without the use of assistive devices or any visible limp. Dr. Tull also noted that Plaintiff had bilateral negative straight leg raise tests. Dr. Tull advised Plaintiff about his activity levels, and referred him back to his back doctor, with instructions to return to Dr. Tull if needed. AR 139.

Aetna also reviewed the results of a consultative orthopedic examination by Dr. Alan Morris ("Dr. Morris") from January 2017, in which he opined that Plaintiff could sit for thirty minutes at one time and up to a total of four hours in an eight-hour work day; stand for a total of an hour in an eight-hour workday; and walk for fifteen minutes at one time and up to a total of one hour in an eight-hour work day. AR 90-102. Dr. Morris noted that, when he asked Plaintiff how long he could sit, stand, or walk, and how much he could lift, Plaintiff indicated "0 minutes and 0 pounds," but it was nonetheless "evident from seeing claimant in the office

6

sitting, standing, and walking that he is in fact . . . able to do more than that."  AR 91.  Dr. Morris further noted that Plaintiff was able to ambulate without the use of a cane, and that be believed a back brace would be of no benefit to Plaintiff, due to his "huge pendulous abdomen."  AR 92.

Aetna also sought and received opinions from three independent peer review experts, Dr. Kenneth Kopacz ("Dr. Kopacz"), Dr. Raymond Decker ("Dr. Decker"), and Dr. David Nowell ("Dr. Nowell"), each of whom concluded, as further discussed below, that Plaintiff was not Totally Disabled under the Plan definition.  AR 266-283; 588.

Dr. Decker conducted the requested review of Plaintiff's orthopedic medical records from an orthopedic surgery perspective.  AR 267-78.  Dr. Decker not only reviewed Plaintiff's medical files, but also conducted a peer-to-peer consultation with Dr. Deutschmann on July 15, 2019.  AR 275.  Dr. Deutschmann informed Dr. Decker that Plaintiff had undergone a lengthy yet conservative course of treatment with him, and because Dr. Deutschmann, did not feel there was anything further he could offer Plaintiff, he had released him from care earlier in the year. AR 275.  Dr. Deutschmann further opined to Dr. Decker that although Plaintiff had pain when he was sitting, he nonetheless thought it may be feasible for Plaintiff to perform seated functional activities for a few hours a day.  AR 275-76.  After considering Plaintiff's medical files and considering the results of the peer-to-peer consultation, Dr. Decker in a report dated September 6, 2019, concluded that "there was no significant objective clinical documentation that revealed a functional impairment that would preclude [Plaintiff] from engaging in compensable employment for a minimum of 25 hours per week from 02/22/19 through current." AR 276.  Dr. Decker opined that Plaintiff should be employable in a sedentary capacity, as long as such position was restricted to lifting not more than ten pounds, and standing and walking for

7

"only 15 minute intervals, over the course of an hour period of 4 hours a day."  AR 276.

Dr. Kopacz, an orthopedic surgeon, reviewed Plaintiff's medical records from the perspective of that medical specialty.  AR 265.  In a report to Aetna dated January 14, 2019, Dr. Kopacz opined that, based upon his review of Plaintiff's medical file, "the clinical documentation do not reveal a functional impairment that would preclude the claimant from engaging in any compensable employment for a minimum of twenty-five hours."  AR 265-66.  He further opined that, "[b]ased on the clinical findings, the claimant should be able to work in a position of at least 25 hours per week as the claimant should be able to sit without restrictions," and "should be able to stand and walk for 15 minutes out of the hour for up to 2 hours per day," as well as "lift and carry up to 10 pounds."  AR 266.

Finally, Dr. Nowell, a psychologist, also concluded that Plaintiff's medical record did not contain evidence of a severe psychiatric disorder and there was "no significant objective clinical documentation that reveals a functional impairment that would preclude the claimant from engaging in any compensable employment for a minimum of 25 hours a week from 02/22/2019 through current.  AR 281.

On June 3, 2019, the Aetna Review Committee ("ARC"), based on its review of the entire record, upheld the denial of LTD benefits, and informed Plaintiff of its decision.  AR 1-3; 597; 602-04.  The ARC determined that the record did not contain any significant objective examination findings to substantiate any functional impairment that prevented Plaintiff from performing a compensable job for a minimum of twenty-five hours per week.  *Id*.  The ARC's review failed to identify significant findings of any functional impairment or documentation of a complete loss of use of his upper extremities, or any cognitive impairment that would preclude all sedentary work.  AR 2.  The ARC concluded its denial letter with information concerning

Plaintiff's right to file a civil action to challenge the decision:

> This decision represents the final step of the administrative review process. You have the right to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act (ERISA). Section 8.7 of the Plan states "A Covered Employee shall have three (3) years from the date of the appeal decision to file an action under ERISA."

AR 3; *see also* AR 938.

Having exhausted his internal appeals, Plaintiff filed this ERISA action on October 31, 2019.  Doc. 1.  Defendant filed an Answer to the Complaint on December 26, 2019.  Doc. 5. The parties thereafter filed their cross-motions for summary judgment, with Plaintiff filing his motion on July 20, 2020, (Doc. 17) and Defendant filing its motion that same day (Doc. 20). Both parties filed responses and replies (Docs. 23, 25, 29, and 30) and the motions are fully briefed and ripe for ruling.

## STANDARD OF REVIEW

### Summary Judgment Standard

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party

must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

## ERISA Standard

The Eighth Circuit has held that, "[u]nder ERISA, a plan participant may bring a civil action to 'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Pralutsky v. Metropolitan Life Ins. Co.*, 435 F.3d 833, 837 (8th Cir.), quoting 29 U.S.C. § 1132(a)(1)(B), *cert. denied*, 549 U.S. 887 (2006).  "The district court reviews de novo a denial of benefits in an ERISA case, *unless* a plan administrator has discretionary power to construe uncertain terms or to make eligibility determinations, when review is for abuse of discretion." *Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan*, 476 F.3d 626, 628 (8th Cir. 2007) (emphasis in original) (citation omitted); *see also Metropolitan Life Ins. Co v. Glenn*, 554 U.S. 105 (2008) (discussing the standard of review federal district courts should employ in reviewing benefits eligibility decisions under ERISA).  "To determine whether the benefit plan gives the administrator or fiduciary discretionary authority, courts must look for explicit discretion-granting language in the policy or in other plan documents."  *McKeehan v. Cigna Life Ins. Co*., 344 F.3d 789, 793 (8th Cir. 2003) (citations omitted).

Here, the Plan at issue includes the requisite language triggering the Court's abuse of discretion standard, in that it grants to Aetna broad discretionary authority to determine eligibility for benefits and construe terms of the Plan. The standard of review for this Court, thus, is abuse of discretion.

> Under the abuse of discretion standard, the proper inquiry is whether the plan administrator's decision was reasonable; *i.e.*, supported by substantial evidence. In considering the reasonableness of a plan administrator's fact-based disability determination, courts should consider whether the decision is supported by substantial evidence. Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Fletcher-Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1179 (8th Cir. 2001) (internal quotation marks and citations omitted). In making its determination "a reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales." *King v. Hartford Life and Acc. Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (internal quotation marks and citation omitted).

The Court must not substitute its own weighing of the evidence for that of the decision-maker. *Gerhardt v. Liberty Life Assur. Co. of Boston*, 736 F.3d 777, 780 (8th Cir. 2013). "A decision supported by a reasonable explanation will not be disturbed even if another reasonable interpretation could be made or if the court might have reached a different result had it decided the matter de novo." *Phillips-Foster v. UNUM Life Ins. Co. of America*, 302 F.3d 785, 794 (8th Cir. 2002) (citation omitted). *See also Midgett v. Washington Group Intern. Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009) (emphasis in original) (internal quotation marks and citation omitted) ("The requirement that the [plan administrator's] decision be reasonable should be read to mean that a decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person

*would* have reached that decision."). Accordingly, the Court is not to weigh the evidence anew, and must not substitute its judgment for that of the claims administrator.

## DISCUSSION

### Arguments of the Parties

In his motion for summary judgment and opposition to Defendants' cross motion for summary judgment, Plaintiff argues that the Plan's definition of Total Disability, requiring as it does that a claimant prove he is not able to perform "any compensable employment" is unreasonable. Plaintiff, in support of his position, cites to *Helms v. Monsanto Co., Inc*., 728 F.2d 1416 (11th Cir. 1984), and its progeny. In *Helms*, the court held that a plan administrator may not interpret plan language so strictly as to deny benefits to any claimant who is physically capable, in the abstract, or any kind of work whatsoever, when such interpretation "would deny benefits to the disabled if he should engage in some minimal occupation, such as selling peanuts or pencils, which would yield only a pittance." 728 F.2d at 1421. Plaintiff also argues that the Plan's review of him claim was perfunctory and performed by unqualified reviewers. Plaintiff additionally argues that the Plan unreasonably failed to develop greater vocational information about Plaintiff's skills and abilities, and should have obtained the advice of a vocational expert.

Defendant argues that its decision was reasonable because it was based on a deliberate principled reasoning process that conforms with applicable ERISA standards, and is supported by substantial evidence. Defendant notes that the ARC considered Plaintiff's entire medical file and ordered additional peer physician reviews before making its decision. It also notes that all peer reviews found that Plaintiff's assertion of Total Disability was not supported by medically-determinable evidence as required by the plan. Defendant also maintains that the members of the ARC and the independent peer review experts were qualified to review the denial decision, in contravention of Plaintiff's arguments to the contrary. Defendant further asserts that the

12

Plan's definition of Total Disability is not unreasonable, and that, while the Eighth Circuit has yet to address this particular issue, the Plan's definition of disability, and other similarly restrictive definitions, has been upheld by courts in this Circuit and across the country for decades.   Finally, Defendant maintains that it was under no obligation to order its own vocational assessment to determine whether Plaintiff could engage in "any compensable employment," despite Plaintiff's argument that Defendant should have further developed the record with respect to his vocational skills and abilities.

**Analysis**

Upon consideration of the record before it, the Court cannot say that Aetna abused its discretion in denying Plaintiff LTD benefits.   As further discussed below, the administrative record shows that Defendant considered all the medical evidence and opinions, and did not act in an arbitrary or capricious manner when determining the outcome of Plaintiff's claim.

As noted above, Aetna originally approved Plaintiff's claim for LTD benefits, and paid such benefits for the entire 24-month period of disability allowable under the Occupational Disability standard.   In order to receive LTD benefits beyond that time, Plaintiff had the burden to provide objective medical evidence that he was unable to perform "any compensable employment for twenty-five hours per week."   *See Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 658-59 (8th Cir. 1992) (it is plaintiff's burden to show that he is entitled to benefits under the terms of the Plan).

Rather than argue that he has proved he was unable to engage in any compensable employment for a minimum of twenty-five hours per week (per the definition of Total Disability under the Plan), Plaintiff takes issue with the Plan's definition of Total Disability.   Plaintiff argues that requiring him to show that he could not perform "any compensable employment"

13

would require him to prove that he was utterly helpless, thus rendering the protections afforded by the Plan meaningless, and violating the underlying policy of ERISA. He also argues that Aetna's interpretation of the phrase "any compensable employment" was unreasonable, as it did not take into account whether he had the transferable skills necessary for sedentary jobs that may be available, or whether such jobs paid a reasonable wage.

The cases on which Plaintiff relies appear to interpret plan definitions of "disability" similar to the one at issue here to mean an inability to "engage in employment yielding a livable income based on one's unique vocational circumstances." *Creelman v. Carpenters Pension & Annuity Fund of Philadelphia & Vicinity*, 945 F.Supp.2d 592, 602 (E.D. Penn. 2013). "Whether or not this is the best construction of these phrases, the Court is not persuaded that it is the *only* reasonable one, and reasonable is all" that the Plan's interpretation need be. *Id.* (emphasis added). Many plans "deny disability benefits where the plan is of the view that the applicant is physically capable of some employment in the economy." *Id.*

Indeed, Courts in the Eighth Circuit have repeatedly upheld plans with similar, or even more restrictive language defining a total disability. *See Hounihan v. Procter & Gamble Disability Comm.*, No. 1:18-cv-00010-AGF, 2019 WL 2549437 at *24 (E.D. Mo. June 20, 2019) (plaintiff had to demonstrate "the inability to perform any job at the company or elsewhere" and plan's definition of total disability "involves a condition of such severity as to require care in a hospital or restriction to the immediate confines of the home"); *Sweno v. Liberty Life Assurance Co.*, No. 02-376, 2003 WL 1572006 *5 (D. Minn. Mar. 10, 2003) ("[T]he 'any occupation' language in the total disability definition indicates that the participant need not be able to find an occupation with similar duties or salary—it only requires that the participant be able to perform with reasonable continuity the material and substantial duties of any other occupation

14

for which he is or could become qualified.  Although plaintiff is not required to prove that he is absolutely helpless, this 'any occupation' standard is not demanding.") (citing *Davis v. American Gen. Life & Acc. Ins. Co.*, 906 F. Supp. 1302, 1310 (E.D. Mo. 1995).

Courts in other circuits have also upheld plans with similarly restrictive language. *See, e.g., Brigham v. Sun Life of Canada*, 317 F.3d 72, 86 (1st Cir. 2003) (plaintiff had the high hurdle of showing the inability to perform any occupation for which he could be trained). Furthermore, courts in this circuit and across the country have repeatedly upheld the language in the very plan at issue here. *See, e.g., Oliver v. Aetna Life Ins. Co.*, 613 Fed. App'x. 892 (11th Cir 2015); *Street v. Aetna Life Ins. Co.*, 188 F.Supp.3d 1279 (M.D. Fl. 2016); *Smith v. Federal Express Corp. Long Term Disability Plan*, 901 F.Supp.2d 992 (W.D. Tenn. 2014); *Weidner v. Federal Express Corp.*, Civil No. 04-4477 ADM//JSM, 2006 WL 1283799 (D. Minn. May 9, 2006).  This Court is likewise not persuaded that the Plan's definition of Total Disability is inherently unreasonable.

As to Plaintiff's argument that Defendant interpreted the definition in an unreasonable manner, the Court is similarly unpersuaded.  Plaintiff asserts that he did not obtain any transferable skills in his job as courier, and Defendant should have considered whether he was actually suited for any other "compensable employment" before denying benefits.  Whether that is true or not, his job with Defendant did not require special skills or education, and the sedentary positions suggested as possible alternative employment for Plaintiff by the vocational experts who testified at his SSA hearing also do not require special skills.  Additionally, Plaintiff points to no particular sedentary job for which he is unqualified, and he has presented no evidence that any such job pays a less than a reasonable wage.  Furthermore, there is no requirement under ERISA that the insurer identify a specific job for a claimant or ensure the availability of an

alternate job before terminating benefits.  *See Sweno*, 2003 WL 1572006 *5 (citing *McKenzie v. General Tele. Co. of Cal.*, 41 F.3d 1310, 1317 (9th Cir. 1994)); *Block v. Pitney Bowes*, 952 F.2d 1450, 1455 (D.C. Cir. 1992).  Thus, Defendant's interpretation of "any compensable employment" was reasonable in this instance.

The Court will now consider Plaintiff's argument that Aetna improperly ignored the SSA's favorable disability decision.  This argument is misplaced.  A plan administrator should consider SSA benefit decisions, and it is clear from the record that the Defendant did review and consider Plaintiff's SSA decision in this case.  However, an award of benefits by the SSA is not dispositive of the plan administrator's determination, but is merely one of many pieces of evidence to be considered.  *Farfalla v. Mut. of Omaha Ins. Co.*, 324 F.3d 971, 975 (8th Cir. 2003) (An "'ERISA plan administrator or fiduciary generally is not bound by a[n] SSA determination that a plan participant is 'disabled,'" even when the plan's definition of disabled is similar to the definition the SSA applied.) (quoting *Jackson v. Metro. Life Ins. Co.,* 303 F.3d 884, 889 (8th Cir. 2002).

Furthermore, aside from the fact that the SSA's decision is not binding on Aetna's decision under the Plan, the Court notes that the Plan's disability framework is both considerably more stringent as well as materially different than that used by the SSA. For example, under the applicable regulations, the SSA counts as disabled a claimant who cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  And, under step five of the SSA's disability framework, the SSA takes the position that only an ability to do full-time work will permit the ALJ to reach a negative disability determination.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process).  Thus, under the

SSA framework, a claimant could be entitled to benefits even though capable of working on a part-time basis.  Meanwhile, the Plan defines "Total Disability" as "the complete inability . . . to engage in any compensable employment for twenty-five hours per week."  AR 1337; 1342.

Another notable difference between the two disability models is that, under the applicable SSA guidelines, a claimant's complaints of pain alone may be sufficient to render him disabled, so long as his subjective allegations of pain are deemed credible.  *See Layton v. Heckler*, 726 F.2d 440, 442 (8th Cir. 1984) ("Whether or not a medical explanation for the pain can be given, it is nevertheless possible that the claimant is suffering from disabling pain.").  *See also Booze v. Saul*, 4:18-CV-568 NAB, 2020 WL 3412200, at *9 (E.D. Mo. June 22, 2020) ("Although evidence of pain suffered by a claimant may be of necessity subjective in nature, and therefore difficult to evaluate, the [ALJ] must give serious consideration to such evidence even though it is not fully corroborated by objective examinations and tests performed on the claimant.") (quoting *Northcutt v. Califano*, 581 F.2d 164, 166 (8th Cir. 1978)).  Meanwhile, the Plan explicitly excludes pain as a sole sufficient reason to find a participant Totally Disabled.  *See* Summary Plan Description, AR 922 ("**It is important to remember that pain alone is not proof of disability**.") (emphasis in original).  The question of precisely how much weight the ALJ assigned to Plaintiff's subjective complaints of pain when finding Plaintiff disabled for SSA purposes is not before the Court, and would be difficult to ascertain in any event.  It is nonetheless clear, however, that the ALJ considered Plaintiff's chronic pain to be a material factor in reaching his decision.  AR 235-36.

In light of the above materially different underpinnings of the SSA's disability determination as compared to that of the Plan, Plaintiff's SSA award does not constitute objective proof that he is Totally Disabled under the Plan.

The Court turns now to Plaintiff's argument that Defendant should have further developed

the record concerning his vocational abilities in order to determine whether he could engage in "any compensable employment" for twenty-five hours per week.  This argument is equally unavailing.  First, as Defendant correctly notes, a plan administrator is not required to obtain an evaluation by a vocational expert in the Eighth Circuit.  *See Potter v. Connecticut Life Ins*., Co., 901 F.2d 685, 686 (8th Cir. 1990); *see also Goracke v. CAN Grp. Life Ass. Co*., No. 06-540, 2007 WL 495008 at *9 (D. Minn. Feb. 13, 2007) ("*Gunderson* does not establish a per se rule requiring vocation evaluations."); *Pettit v. Olin Corp*., No. 93-0254-CV-W-6, 1994 WL 525964 at *4 (W.D. Mo. Sept. 26, 1994) ("The court does not agree that *Gunderson* requires the use of a vocational expert, per se, in every ERISA benefits determination.").  While seeking the opinion of a vocational expert may be reasonable when the record is devoid of evidence of a claimant's vocational circumstances and abilities, such was not the case here.  More than one vocational expert testified at Plaintiff's SSA hearing that a person with Plaintiff's limitations could perform sedentary work and that such work was available in the national economy.

The Court turns now to the question of whether Aetna's decision was reasonable and supported by substantial evidence.  When Plaintiff's LTD benefits for an Occupational Disability were nearing their end, Aetna informed Plaintiff that it was beginning an investigation to determine whether he qualified for Total Disability benefits under the Plan.  The treating records of Plaintiff's health care providers were submitted to Aetna, and Aetna, as part of that further review, reviewed Plaintiff's entire medical record.  Aetna determined that Plaintiff was not Totally Disabled under the Plan, and denied LTD benefits.

After this denial, Plaintiff appealed, and his claim was reviewed again by Aetna.  This time, Aetna requested expert reports from Drs. Decker, Kopacz, and Newell.  Each of these experts, after conducting their own independent review of Plaintiff's medical records, concluded that

Plaintiff was not Totally Disabled under the Plan, and LTD benefits were denied.  As more extensively discussed below, the undersigned finds that this determination was based on more than a scintilla of evidence, and was not arbitrary and capricious, but rather, reasonable in light of all the evidence in Plaintiff's claims file

Plaintiff argues that the independent experts retained by Aetna were not sufficiently qualified, and performed an inadequate review of Plaintiff's medical file.  Thus, Aetna's reliance on their reports renders its denial of his LTD benefits arbitrary and capricious.  Plaintiff contends that the medical records of his own physicians support his assertion that he is Totally Disabled under the Plan, and impliedly argues that Aetna's experts and the members of the ARC must not have thoroughly considered all the evidence of record gleaned from his doctors.  The Court finds that the record does not support the argument that Aetna's expert review was in any way cursory. Furthermore, Plaintiff's argument would seem to suggest that Defendant relied solely on the expert reports in denying Plaintiff's claim, while the record clearly indicates that such was not the case. The expert reports were but one piece of evidence relied on when examining Plaintiff's claim. Aetna also considered Plaintiff's medical treatment records, the reports and opinions of his physicians, the record before the SSA, and Plaintiff's own statements, in reaching a decision that Plaintiff was not Totally Disabled under the terms of the Plan.  Additionally, while a plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician," it need not accord extra respect to the claimant's own physicians, and the plan administrator does not act arbitrarily and capriciously by relying on the opinions of non-treating physicians or independent file reviewers or by giving different weight to its independent experts. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *Weidner v. Fed. Express Corp*., 492 F.3d 925, 930 (8th Cir. 2007) (plan administrator did not abuse its

19

discretion in denying claimant disability benefits despite treating physician's opinion that the claimant was fully disabled).

"When there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless the record does not support denial." *Johnson v. Metropolitan Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006) (citation omitted).  Here, all the independent physicians reviewing Plaintiff's file concluded that he was not Totally Disabled under the Plan definition.   Under these circumstances, the Court finds Aetna's decision to deny Plaintiff benefits was not an abuse of discretion, and thus even if another reasonable interpretation exists, this Court, "may not simply substitute its opinion for that of the plan administrator." *Fletcher-Merrit*, 250 F.3d at 1180. *See also Midgett*, 561 F.3d at 897-98 (holding the decision to deny the plaintiff's disability claim was supported by substantial evidence, as the peer reviews "accurately represent[ed] [Plaintiff's] medical record and adequately address[ed] the evidence supporting her claim for disability," but explained that these findings did not demonstrate that the plaintiff was unable work.); *Rittenhouse*, 476 F.3d at 632 (internal quotation marks and citation omitted) ("[The Plan's] decision is supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

While it is undeniable that the record indicates that Plaintiff suffers from painful lower back conditions, the Plan documents make it clear that Plaintiff carries the burden of submitting significant objective findings that he is incapable of engaging in any compensable employment for twenty-five hours per week.  The ARC reviewed all of the medical documentation submitted by Plaintiff and determined that Plaintiff failed to submit significant objective findings substantiating a Total Disability.  The medical documentation constitutes substantial evidence

20

supporting the Committee's decision that there is a lack of significant objective findings to substantiate a claim for a Total Disability, and the Court cannot find that the ARC's decision was unreasonable, nor that it constitutes an abuse of discretion.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 20) is **GRANTED**, Plaintiff's Motion for Summary Judgment (Doc. 17) is **DENIED**, and Plaintiff's Complaint is **DISMISSED** with prejudice.   An appropriate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that the bench trial set in this matter for January 4, 2021, is **VACATED**.

Dated this 8th day of December, 2020.

/s/Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE